

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

ENTERED
03/09/2010

IN RE: §
JAVIER ESTRADA, INC. §    CASE NO: 09-50324
    Debtor(s) §
 §    CHAPTER 7

### ORDER DENYING STAY PENDING APPEAL
### (DOC # 82)

On February 11, 2010, the Court held a hearing and granted the chapter 11 Trustee's motion to convert this case from chapter 11 to chapter 7. In docket # 82, Debtor seeks a stay of the conversion order pending appeal. The motion is denied because there is simply not enough money available to operate the business properly. Debtor was able to operate the business as a debtor in possession only by violating the Bankruptcy Code and sound business practices. The Court cannot ask the Trustee to operate the business that way.

### I.    FACTS

The facts supporting this decision are taken from the docket sheet of this case, were presented in evidence at the hearing on February 10, and were presented at a hearing on February 24, 2010. In the next few days, the Court will issue findings and conclusions from that latter hearing; those findings and conclusions will illuminate this memorandum opinion, which is issued on an emergency basis and therefore does not fully recite those facts.

Mr. Estrada (Debtor's control person) testified that he ran an ambulance business for 23 years under a d/b/a which was eventually incorporated into the Debtor. In more recent years, Mr. Estrada or Debtor failed to pay approximately $700,000[1] of trust fund taxes to the United States. The Internal Revenue Service began to levy and about March, 2009, Mr. Estrada sought legal representation.

Attorney Castillo declined the engagement. It is not clear who acted as Mr. Estrada's attorney from March to June, 2009. As early as March 2009 Debtor had received legal advice from Mr. Lopez who asserts that he was acting as a paralegal for Mr. Castillo and Mr. Fahey. , Mr. Fahey had discussions with Mr. Lopez about the engagement as early as March, 2009, and definitively accepted the engagement to represent Debtor in early June, 2009.[2] Mr. Fahey did not seriously interview Debtor until November, 2009, over 8 months after Mr. Estrada first sought legal advice[3] and over 5 months after Mr. Fahey accepted the engagement by cashing Mr. Estrada's check.

---

[1] Debtor's schedules show $562,508.19 in undisputed secured claims held by the IRS. (Docket ## 16, 23.) The IRS proof of claim asserts a $567,096 secured claim and a $145,211.05 unsecured, priority claim. (Claim # 1 filed November 18, 2009. Debtor did not file an objection to the claim.

[2] Mr. Fahey accepted and cashed Debtor's check in early June, 2009.

[3] Which occurred about March, 2009.

About May, 2009, the City of Rio Bravo dishonored its check to Debtor for $365,000.[4] Debtor's motion for a stay pending appeal states that "[t]he lack of these funds for working capital created a cash-flow crisis, which led the company to seek protection under Chapter 11 of the Bankruptcy Code." That assertion is not consistent with Mr. Estrada's testimony and Mr. Fahey's testimony at the hearing on February 24. At that hearing, they testified that Mr. Castillo and Mr. Lopez recommended that Debtor file a bankruptcy petition as early as March 2009 to address the IRS problem. They also testified that it was repossession of a van, not the dishonored check that precipitated the bankruptcy filing.

Debtor's motion for stay pending appeal also states that two other reasons for the cash flow crisis were: (i) Medicare stopped paying claims because Mr. Estrada had not properly registered Debtor as a successor to the prior business[5] and (ii) the IRS debt. The motion does not discuss the repossession of the van or Mr. Lopez's advice to cease paying creditors in anticipation of bankruptcy.

Mr. Estrada testified that he tried desperately, and unsuccessfully, to contact Mr. Fahey's paralegal, Mr. Lopez, to obtain assistance of counsel in the period June, 2009, through the end of October, 2009. Mr. Estrada testified that because Debtor stopped paying insurance premiums his insurance was cancelled and because Debtor stopped paying First National Bank, a secured creditor, the bank repossessed a van. Mr. Estrada testified that desperate calls to Mr. Lopez after that repossession resulted in the filing of a bankruptcy petition under chapter 11 on November 4, 2009.

Subsequent to filing the bankruptcy petition, Debtor continued to operate the business as a debtor in possession. But Debtor failed to obtain public liability insurance and continued to operate the business without insurance for three months. That put the public in jeopardy. Even as late as the February 10 hearing there was no clear evidence that Debtor had obtained insurance. The insurance company had refused to write insurance because of the bankruptcy filing, Debtor did not have adequate funds to pay insurance premiums, and the funds that the estate did have were cash collateral and the Trustee could not obtain permission to use cash collateral.

Mr. Lopez acknowledged to the secured lenders that bankruptcy law prohibits a debtor from using cash collateral without either (i) the lender's permission, or (ii) an order of the bankruptcy court. Mr. Lopez negotiated with the lenders for use of cash collateral, and the lenders agreed to limited use of cash collateral contingent on (i) agreement on a budget, (ii) provision of adequate protection for funds used, and (iii) a court order recognizing the first two requirements and authorizing the use of the collateral. Despite agreeing to do so, Debtor never filed a motion to accomplish any of these. The cash that the estate has, such as it is, is subject to liens and Debtor cannot provide adequate protection for use of cash collateral because there is

---

[4] The check appears to be dated May, 2009. Debtor's motion for stay pending appeal refers to the check as a $355,000 check, but Debtor's Exhibit #1 introduced into evidence on February 10 indicates that the check is for $365,000 plus.

[5] In proof of claim ## 4 and 8, the Texas Health and Human Services Commission assert a claim for overpayment in the amount of about $13,000.

simply no equity to protect the lender and there is no evidence that Debtor can otherwise provide adequate protection for the secured creditors.

Debtor failed to file monthly operating reports. These reports are required in every chapter 11 case. They are in a format designed (among other things) to allow the US Trustee and creditors to monitor business operations in chapter 11 to avoid continued business operations that generate losses and administrative insolvency. Debtor simply did not file the reports, even though they are required.

In the motion for a stay pending appeal, Debtor argues that it presented evidence that it was highly profitable. However, because Debtor has never filed the required monthly operating reports, the Court does not have the required financial information to examine that contention.

The evidence that Debtor presented at the February 10 hearing is inadequate. Debtor has never filed an application to engage an accountant, despite a demand from the US Trustee on January 16 that it do so.[6] Debtor's attorney testified on February 24 that Debtor's books and records were totally inadequate (or nonexistent) and that counsel had himself put together the numbers that allegedly demonstrate profitability. Those numbers are repeated and elaborated in the motion for stay pending appeal, but they are unconvincing because they fail to provide a comprehensive and convincing financial analysis. They are, at best, unsubstantiated and incomplete evidence of hope for financial success. Debtor's counsel, who prepared the numbers, testified that he has no accounting expertise and bases his analysis on experience as a lending officer. The numbers that counsel presents are advocacy, not analysis. The prospects for income are hopes, not demonstrated performance. The estimates of expenses are unsubstantiated estimates, not historical experience. Debtor's counsel testified that there are no historical records to provide accurate numbers. The numbers in the motion for stay pending appeal are not credible.[7]

If nothing else, Debtor's inability from March 2009 through February 2010 (during which period Mr. Estrada controlled the business) (i) to address a $700,000 IRS debt, (ii) to pay secured debt, (iii) to fund insurance premiums, and (iv) to accumulate sufficient funds in bank accounts to fund ongoing operations casts substantial doubt on any allegation of Debtor's ability to pay all debt in 3 years as alleged in the motion for stay pending appeal. The chapter 7 Trustee reported that financial records were completely inadequate to determine any prospects for profitability and that Mr. Estrada had accumulated and turned over to her inadequate cash to fund continuing operations. That testimony was credible. There was no credible evidence to the contrary.

---

[6] Docket # 24, subparagraph (i).

[7] For example, the first paragraph in docket # 82, Debtor's motion for emergency stay, states that Debtor "historically" generates revenues of $1.2 million with a profit margin of 27%. If Debtor indeed generated a profit of $324,000 per year for 23 years, it is hard to understand how its assets could be less than $150,000 more than its debts (even assuming that Debtor can collect the Medicare receivables and Rio Bravo NSF check, see Summary of Schedules, docket # 16), how Debtor could have no material retained earnings, how Debtor's debts would be approximately equal to assets, and how Debtor could have inadequate cash in the bank for operations. (Although Debtor filed amended schedules B and D (docket # 23), Debtor did not file an amended summary. The amended schedules do not change the analysis materially.)

It is virtually undisputed that Debtor failed to pay Form 941 employment (trust fund) taxes while Mr. Estrada was running the business as a debtor in possession (November 4, 2009, through February 10, 2009).  Money allegedly withheld from employees' paychecks was never paid to the United States.  Evidence at the February 10 hearing demonstrated that there is a substantial deficiency, which the Trustee could not pay from funds on hand.

Very simply, the Court cannot grant a stay pending appeal because that would require the trustee to operate a business without insurance, without cash to pay employees, without the cash to pay trust fund taxes, and without cash to pay other creditors.

## II.     CONCLUSIONS

Regardless of the legal arguments and tests that Debtor asserts, the Court simply cannot order the Trustee to operate a business in violation of the law.  A stay pending appeal would require the Trustee to operate the business as the Debtor did, illegally.

At a hearing on February 24, Mr. Estrada testified that he agreed to appointment of a chapter 11 trustee because he thought that the trustee would be an accomplished business person who would solve all those problems.  The Trustee testified that she did not see a way to solve those problems, and the Court does not see a way to solve those problems.  The Court's conclusion is supported by the fact that Mr. Estrada was unable to solve those problems when he ran the company.

The Court concludes that there is little or no likelihood of success on the merits, that a stay could potentially harm employees and the public, and that a stay would not serve the public interest.

Therefore, a stay pending appeal is denied.

SIGNED 03/08/2010.

_____
Wesley W. Steen
United States Bankruptcy Judge